# 2007 DTA 75

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL VI ESPECIAL**

DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR
Recurrido

v.

COMP USA OF P.R. INC.
Recurrente

Núm. KLRA-2005-00491

San Juan, Puerto Rico, a 24 de mayo de 2007

Panel integrado por su Presidente, el Juez Rodríguez Muñiz,
el Juez Rivera Martínez y la Juez Velázquez Cajigas

Velázquez Cajigas, Jueza Ponente

# TEXTO COMPLETO DE LA SENTENCIA

Comp USA of P.R., Inc. (Comp USA) recurre en revisión judicial de una determinación final administrativa del Departamento de Asuntos del Consumidor (D.A.C.O.) que en reconsideración le impuso una multa administrativa por violación al Reglamento de Prácticas y Anuncios Engañosos. ■ Revocamos la determinación administrativa. Veamos.

## I

El D.A.C.O., por conducto de uno de sus inspectores, luego de observar el boletín de anuncios de artículos en venta de Comp USA, le emitió un aviso de infracción el 5 de enero de 2005. Este aviso reza como sigue:

Por la presente se le notifica de la siguiente infracción a la Ley- Regla 13 y 15 del Regl. de Prácticas y Anuncios Engañosos, según enmendada. La violación consiste en que la firma en epígrafe anunciaba mediante "*shopper*" de especiales y precios regulares válidos del 4 al 5 de enero de 2005, artículos en venta especial y/o precios regulares indicando la cantidad disponible de éstos por tienda, cuando los mismos tendrán que estar disponibles en cantidades suficientes durante todo el período de efectividad de la venta anunciada y no son artículos identificados como liquidación de temporada e inventario.

El 24 de enero de 2005, el D.A.C.O. emitió una "*Notificación de aviso de infracción*", por violación a las Reglas 13 y 15 del Reglamento Núm. 6772 de Prácticas y Anuncios Engañosos, de 19 de febrero de 2004 (Reglamento 6772), la cual reza como sigue:

"*La violación incurrida consiste en que la firma de epígrafe anunciaba mediante "shopper" de especiales y precios regulares válidos del 4 al 5 de enero de 2005, artículos en venta especial y/o precios regulares indicando la cantidad disponible de éstos por tienda cuando los mismos tendrán que estar disponibles en cantidades suficientes durante todo el período de efectividad de la venta anunciada y no son artículos identificados como liquidación de temporada e inventario.*"

Se le notificó la imposición de una multa administrativa de dos mil dólares ($2,000.00). Conforme a las disposiciones del Reglamento 6772 relativas a la impugnación de tal dictamen administrativo, la recurrente Comp USA presentó ante D.A.C.O. una moción solicitando la desestimación de la "*Notificación de aviso de infracción*" y el cierre y archivo del caso. En la misma plantea:

"*Luego de analizados los referidos documentos, nos pudimos percatar que tanto el **Boleto de Infracción**, como la correspondiente **Notificación de Aviso de Infracción**, ninguno dispone cuáles son los supuestos artículos que debían estar disponibles en cantidades suficientes durante toda la vigencia del shopper y que no estaban identificados como artículos de liquidación de temporada e inventario.*"

Plantea la insuficiencia de la notificación, situación violatoria del debido proceso de ley, al no identificar los artículos que dieron base a la querella. Además, plantea que el aviso de infracción no está firmado por ningún representante del D.A.C.O. tal como lo exige el Reglamento 6772.

D.A.C.O. convocó a una vista administrativa en la cual se reprodujo la moción de desestimación de la querella por parte de Comp USA por los mismos fundamentos. El 17 de mayo de 2005, notificada el mismo día, la Oficial Examinadora, Lcda. Delia E. Pagán Robles, emitió resolución acogiendo el planteamiento de

desestimación. Se basó en los argumentos de las partes, las constancias del expediente de la agencia y en el derecho aplicable. Acorde con lo anterior, en lo pertinente, llegó a las siguientes:

## *"DETERMINACIONES DE HECHOS*

*1: El 5 de enero de 2005, un funcionario de este Departamento realizó una investigación de la firma infractora.*

*2. El inspector determinó que el infractor violó las Reglas 13 y 15 del Reglamento de Prácticas y Anuncios Engañosos, según enmendado.*

**3. La violación consistía en que "la firma de epígrafe anunciaba mediante "shopper de especiales y precios regulares válidos del 4 al 5 de enero de 2005, artículos en venta especial y/o precios regulares indicando la cantidad disponible de éstos por tienda cuando los mismos tendrán que estar disponibles en cantidades suficientes** *durante todo el período de efectividad de la venta anunciada y no son artículos identificados como liquidación de temporada e inventario. (Énfasis nuestro)*

*4. Con motivo de dicha infracción se le notificó el 24 de enero de 2005 una Notificación de Aviso de Infracción con la imposición de una multa de $2,000.00.*

**5. El aviso carece de la identificación de los artículos a los cuales hace referencia el Departamento los cuales alegadamente constituyen violación al Reglamento**. *(Énfasis nuestro)*

*6. El compareciente radicó una Moción de Desestimación el 2 de febrero de 2005 estableciendo:*

*a) El boleto de infracción y la Notificación de Aviso de Infracción -ninguno dispone cuáles son los supuestos artículos que debían estar disponibles en cantidades suficientes durante toda la vigencia del shopper e inventario.*

*b) El boleto de infracción no está firmado por ningún representante de la compareciente.*

*c) Violación al Reglamento de Sanciones y Multas Regla 8 (b), (2) y (4) porque no contiene el boleto las disposiciones legales o reglamentarias por las cuales se le notifica el aviso de infracción y que tampoco contiene las circunstancias en que se realiza la inspección.*

*7. En la argumentación legal, el compareciente expuso:*

*a) Falta de notificación adecuada en violación al debido proceso de ley, Rivera Rodríguez & Co. v. Lee Stowell Taylor, 133 D.P.R. 881 (1983).*

*8. A la fecha de la celebración de la vista administrativa, este Departamento no había contestado la Moción de Desestimación relacionada.*

*10. El Lcdo. Colberg expuso en su argumentación verbal que se viola el debido proceso de ley, ya que la violación que se alega que se cometió no especifica los artículos ni se refiere a ninguno en conciso.*

*Alega falta de notificación adecuada, ya que no especifica los artículos en que se basa la alegada infracción para poder defenderse; adolece de falta de especificidad.*

*11. El Departamento expuso en su argumentación verbal, por conducto de su representante Lcda. Cordero,*

*que de la infracción específicamente surge que se refiere a los artículos en venta especial y/o precios regulares. Se refiere específicamente a todos los que no están identificaos (sic) como liquidación de temporada e inventario. De todo el shopper son los que dicen las cantidades disponibles a los que se refiere la infracción."*

## CONCLUSIONES DE DERECHO

Este Departamento-está facultado por el Reglamento de Prácticas y Anuncios Engañosos, del 9 de enero de 2002, para proteger a los consumidores de las prácticas y anuncios engañosos que creen o tiendan a crear una apariencia falsa o engañosa sobre bienes o servicios ofrecidos en el comercio. ■

El Art. 13 del Reglamento, *supra,* dispone que el comerciante tendrá disponible para la venta los bienes anunciados en especial en cantidades suficientes para responder a la demanda razonablemente anticipada durante todo el período de efectividad de la venta anunciada, a menos que se notifique adecuadamente que la mercancía sólo estará disponible en tienda fuera de Puerto Rico. En tal caso, la notificación deberá aparecer clara y adecuadamente.

En su sección 2159, la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A., recoge los preceptos básicos de (sic) del debido proceso de ley disponiendo como requisitos de notificación la referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se imputa una infracción a las mismas *y a los hechos constitutivos de tal infracción.*

Tal notificación debe establecer claramente, con especificidad y *oportunamente,* la conducta prohibida incurrida de tal forma que el presunto infractor pueda tomar conocimiento sobre ella y defenderse adecuadamente. El Departamento también tiene la obligación de conceder una adjudicación *imparcial* basada en el expediente. Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. 2151.

Del expediente claramente surge que el Departamento omitió establecer con especificidad *cuáles* artículos del *Shopper* se anunciaba en cantidades limitadas por tienda. En adición, el Aviso carece de las bases racionales y **requisitos reglamentarios para poder concluir que la cantidad anunciada por artículo no eran suficientes, privando al presunto infractor de tomar conocimiento oportuno de las mismas para poder refutarlas en la vista administrativa.**

En cuanto al segundo fundamento para la solicitud de desestimación al Aviso de Infracción de no informar el nombre del representante, exponemos lo siguiente:

*"El Reglamento para la Imposición de Sanciones y Multas aprobado el 29 de marzo de 2004 requiere que se incluya el nombre del representante que recibe la infracción."* (Art. 8B(s) del Reglamento.)

El inspector del Departamento, *Orlando Rivera,* no cumplió con incluir el nombre del representante que recibió el Aviso de Infracción. Privó al presunto infractor de este requisito Reglamentario. *"Una vez una Agencia ha promulgado unos reglamentos para facilitar su proceso decisional y limitar el alcance de su discreción viene obligada a observarlos estrictamente y no queda a su soberana voluntad los derechos que ella misma a extendido...", García Cabán v. UPR,* 120 D.P.R. 165, *pág. 39, Manual de Derecho Administrativo 2002, Prof. Javier A. Echevarría Vargas.*

El Inspector del Departamento no notificó y tampoco orientó al personal del presunto infractor de tal forma que tuviera conocimiento de su presencia en las facilidades, otorgando la oportunidad de corregir la conducta presuntamente infractora en beneficio de los consumidores. Aunque el Departamento haya determinado en el expediente que el presunto infractor es reincidente, no puede privarlo de notificarle conforme al Reglamento el Aviso de Infracción.

Conforme las facultades conferidas a este Departamento por la Ley Núm. 5 del 23 de abril de 1973, este Departamento emite la siguiente:

"*ORDEN*

*De conformidad con las anteriores Determinaciones de Hechos y Conclusiones de Derecho que se incorporan y hacen formar parte de esta Resolución, se declara Con Lugar la Moción de Desestimación por falta de especificidad en la notificación del boleto de infracción y por incumplimiento a los Reglamentos procesales antes citados.*"

El 26 de mayo de 2005, el abogado del interés público de D.A.C.O. solicitó reconsideración.

El 31 de mayo de 2005, la propia Lcda. Pagán Robles emite un "*Informe sobre resolución en reconsideración*", en donde consigna su posición de no reconsiderar su determinación. Reiteró:

"*Por directriz, esta Juez Administrativa está impedida de firmar la Resolución en Reconsideración, lo cual fue reservado para la Directora Regional, Lcda. Norma Giralt Armada.*

*Sin embargo, en cumplimiento a la directriz antes especificada, atendemos el presente recurso a solicitud de la Directora Regional, mediante informe, conforme a las disposiciones del Artículo 10 de la Ley Núm. 5 del 23 de abril de 1973, según enmendada y sección 3.13 de la Ley de Procedimiento Administrativo Uniforme, 3 LPRA secc. 2163.*"

**El requisito de especificidad al cual nos referimos y el cual es requerido por el Debido Proceso de Ley no se limita en citar las Reglas presuntamente incumplidas, si no en detallar y especificar la conducta constitutiva de ilicitud para que el presunto infractor pueda tener conocimiento a lo que se refiere el Departamento y pueda defenderse adecuadamente en la vista administrativa.**

**El aviso hace referencia a un *shopper* el cual tiene artículos en venta especial con y sin límites de cantidades. El presunto infractor o el Departamento en su faceta adjudicativa, no puede identificar a que (sic) artículo se refiere. Si la intención es que por la mera limitación de un artículo en especial constituye una violación, debe el aviso de infracción concluir como resultado de una investigación, que la cantidad del mismos (sic) no es suficiente.**

Las notificaciones del Departamento están ausente (sic) del proceso investigativo realizado que fundamente la conclusión que las cantidades anunciadas no son suficientes. **Aunque el Departamento hubiese realizado la investigación, viene obligado a incluir en la notificación, los fundamentos que concluyen que *no son suficientes* para que el presunto infractor pueda defenderse de ellos en la vista administrativa.**

Destacamos que el requisito de especificidad de los hechos no sólo está contenido en los reglamentos, sino también en la Ley de Procedimiento Administrativo Uniforme requiere en su sección 3.4(1)(b) (*la querella debe contener los hechos constituti[v]os de la infracción*, 3 L.P.R.A. secc. 2154.) No estamos requiriendo algo nuevo al Departamento. Refiérase a la especificidad establecida en el aviso de infracción de la Querella AE 05-25612-R por los inspectores, Javier Olmo y José A. Rodríguez.

. . . . . . . .

No trae a la atención el Interés Público en el recurso de reconsideración, legislación, reglamento o jurisprudencia que nos obligue a revocar nuestra determinación. Es un requisito para el abogado del Interés Público cumplir con la norma expuesta a continuación:

*"La parte afectada por una determinación de hecho debe demostrar en primer lugar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia demostrada hasta el punto de que no se puede concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración." Ramírez Rivera v. Departamento de Salud,* **99 JTS 47.**

El Informe fue archivado en autos y enviado copia a las partes.

El día 8 de junio, notificado el 9 de junio, ambos de 2005, el D.A.C.O., por conducto de la Directora Regional, Lcda. Norma Giralt Armada, emite una resolución en donde deja sin efecto el informe del 31 de mayo de 2005 suscrito por la Lcda. Pagán Robles, entendiendo que las normas administrativas del Departamento le confieren la facultad exclusiva a la Directora Regional para pasar juicio sobre las mociones de reconsideración. Citamos en lo pertinente:

*"En forma alguna, la Oficial Examinadora del caso que nos ocupa fue autorizada a emitir el Informe de referencia y notificado a las partes el 1 de junio de 2005. Su actuación contraria a derecho excedió las facultades que le han sido conferidas, por lo cual dicho documento carece de validez alguna para los propósitos de ser considerado como la Resolución en Reconsideración del presente caso y se tendrá por no emitido.*

*En mérito de lo previamente expresado se emite lo siguiente:*

*ORDEN*

*Se deja sin efecto el Informe Sobre Resolución en Reconsideración del 1 de junio de 2005. Se toma conocimiento de la reconsideración presentada por el Interés Público y se le concede a la firma de epígrafe un plazo de 30 días para que se exprese sobre la reconsideración presentada."*

Dentro del término concedido a la Comp USA y sin esperar que expirara, emitió resolución en reconsideración. Resolvió:

*"En el caso ante nuestra consideración, la Notificación de Aviso de Infracción emitida a Comp USA por el Departamento dispone lo siguiente:*

*La violación incurrida consiste en que la firma de epígrafe anunciaba mediante "shopper" de especiales y precios regulares válidos del 4 al 5 de enero de 2005, artículos en venta especial y/o precios regulares indicando la cantidad disponible de éstos por tienda cuando los mismos tendrán que estar disponibles en cantidades suficientes durante todo el período de efectividad de la venta anunciada y no son artículos identificados como liquidación de temporada e inventario."*

De una lectura de la Notificación de Aviso de Infracción surge que Comp USA fue notificada de que en el *"shopper"* de especiales y precios regulares, los cuales eran válidos del 4 al 5 de enero de 2005, se anunciaban **ciertos artículos** indicando la cantidad disponible de éstos, a pesar de que el anuncio no indicaba que dicha mercancía estaba en liquidación de temporada o inventario.

En aras de prepararse para la vista administrativa, lo único que Comp USA tenía que hacer era examinar el *"shopper"* objeto de la controversia, el cual fue preparado por dicha parte, para darse cuenta de que la inmensa mayoría de los artículos allí anunciado limitaban las cantidades, sin detallar que eran artículos de liquidación de temporada o inventario. Lo anterior en incumplimiento con la Regla 15 del *Reglamento, supra.*

La Regla 15 del *Reglamento, supra,* prohíbe que un comerciante condicione una venta especial a un número limitado de mercancía, a menos de que se anuncie que se trata de artículos fuera de temporada o de liquidación.

La violación imputada a Comp USA consiste en el hecho de haber publicado un shopper anunciando **cierta mercancía en cantidades limitadas, sin tener que entrar a considerar si las cantidades ofrecidas eran o no adecuadas**. El Aviso de Infracción emitido a Comp USA notifica adecuadamente los hechos constitutivos de la infracción.

· Por lo anterior, resolvemos que el Aviso de Infracción emitido contra Comp USA constituye una notificación adecuada, toda vez que no era necesario el haber indicado los artículos que habían sido limitados.

Pasemos a resolver si en el caso ante nos, el no haber incluido el nombre del representante de la parte infractora que recibió el boleto de infracción es fundamento para desestimar el caso de epígrafe.

De un lenguaje del Artículo 6 (j) de la Ley Núm. 5, *supra,* surge que entre las varias formas de los funcionarios del Departamento de la División de Protección al Consumidor pueden ejercer sus funciones de fiscalización de los anuncios y de las prácticas engañosas en el comercio, se encuentran el realizar una investigación en el local del comercio o realizando una revisión de las hojas de especiales, comúnmente denominadas "*shoppers*".

**Si bien es cierto que el Artículo 8 B(2) del Reglamento para la Imposición de Sanciones y Multa, aprobado el 29 de marzo de 2004, requiere que se incluya el nombre del representante que recibe la infracción, resolvemos que dicho requisito solamente aplica cuando la investigación se lleva a cabo en el local del comercio en controversia.** En el caso ante nuestra consideración, surge del expediente administrativo que el inspector del Departamento inspeccionó el "*shopper*" objeto de la controversia y del examen realizado procedió a emitir el aviso de infracción. **Por lo tanto, en las situaciones, como en la de autos, donde un inspector de la División de Protección del Consumidor, al ejercer sus funciones de fiscalización de los anuncios publicados a través de los distintos medios de comunicación, es imposible e irrazonable requerir que se incluya un nombre del representante que recibe la infracción, toda vez que el boleto de infracción no se emitió como resultado de una visita a las facilidades del comerciante, sino de una inspección de los "*shoppers*" publicados por los comerciantes.**

En virtud de lo anterior, procede declarar Ha Lugar la Moción de Reconsideración presentada por la parte recurrente.

Por todo lo cual, este Departamento, en virtud de las facultades conferidas por la Ley Núm. 5 de 23 de abril de 1973, según enmendada, emite la siguiente:

*"ORDEN*

*Se declara HA LUGAR la Moción de Reconsideración presentada por la parte recurrente.*

*Se deja sin efecto al Resolución emitida el 17 de mayo de 2005, notificada en la misma fecha.*

*Se confirma la multa notificada a Comp USA of Puerto Rico, Inc., el 24 de enero de 2005.*

*Se ordena a Comp USA of Puerto Rico, Inc. que dentro del plazo de veinte (20) días a partir de la fecha de notificación de la presente resolución pague la suma de $2,000.00 por concepto de la multa impuesta."*

No conforme con dicha resolución, recurre Comp USA mediante el presente recurso de revisión judicial. Los siguientes son los errores planteados:

*"Erró D.A.C.O. al no garantizar el debido proceso de ley al cual tiene derecho la parte recurrente, y*

*consecuentemente, al emitir una Resolución en Reconsideración donde se le impone a la parte recurrente el pago de una multa administrativa. Específicamente, D.A.C.O. falló en no cumplir con el requisito procesal más básico de nuestro ordenamiento jurídico, entiéndase una notificación adecuada.*

*Erró D.A.C.O. además, en la aplicación de sus propios Reglamentos, al interpretar que no hace falta el nombre o la firma de un representante del presunto infractor, tal como lo exige el Reglamento para la Imposición de Sanciones y Multas, del 2004."*

## II

### A

La Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101, *et seq.* (L. P. A. U.), establece que la propia agencia podrá radicar querellas ante su foro administrativo por infracción a las leyes o reglamentos que administra. La querella debe contener el nombre y la dirección postal del querellado, los hechos constitutivos de la infracción y las disposiciones legales o reglamentarias por las cuales se le imputa la violación. 3 L.P.R.A. sec. 2154.

La agencia notificará por escrito a todas las partes o a sus representantes autorizados e interventores la fecha, hora y lugar en que se celebrará la vista adjudicativa. La notificación se deberá efectuar por correo o personalmente con no menos de quince (15) días de anticipación a la fecha de la vista, excepto que por causa debidamente justificada, consignada en la notificación, sea necesario acortar dicho período, y deberá contener la siguiente información:

"........

*(d) Referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se imputa una infracción a las mismas, y a los hechos constitutivos de tal infracción."*

3 L.P.R.A. sec. 2159.

La Ley Núm. 5 de 23 de abril de 1973, conocida como la *"Ley Orgánica del Departamento de Asuntos del Consumidor,"* 3 L.P.R.A. sec. 341, creó el Departamento de Asuntos del Consumidor con el propósito primordial de vindicar e implementar los derechos del consumidor, frenar las tendencias inflacionarias; así como el establecimiento y fiscalización de un control de precios sobre los artículos y servicios de uso y consumo. Sec. 341 (b).

El Secretario del D.A.C.O. tiene entre sus poderes y facultades el *"reglamentar y fiscalizar los anuncios y las prácticas engañosas en el comercio, incluyendo la facultad de fiscalizar las reclamaciones sobre la calidad y demás cualidades de los productos y servicios realizados a través de los distintos medios de comunicación, así como requerir de los anunciantes evidencia de la veracidad de los reclamos realizados".* Sec. 341(e), inciso (j).

En virtud de la facultad de aprobar y adoptar reglamentos, el D.A.C.O. aprobó el Reglamento Núm. 6772 de Prácticas y Anuncios Engañosos de 19 de febrero de 2004 (Reglamento 6772), vigente y aplicable a la situación de hechos que motivan este recurso. Se creó con el propósito de proteger a los consumidores de las prácticas y anuncios que creen o tiendan a crear una apariencia falsa o engañosa sobre bienes o servicios ofrecidos en el comercio. Además, prohíbe las prácticas y anuncios engañosos con el objetivo de establecer un clima de confianza y respeto entre comerciantes y consumidores. (Regla 2 del Reglamento 6772).

La Regla 5 del Reglamento 6772 define lo que constituye un *"anuncio"*, *"anuncio engañoso"*, *"bien"* y

Publicaciones JTS presentó dos nuevas obras de Derecho Penal:
Derecho Procesal Penal Etapa Investigativa y Derecho Penal Sustantivo

JTS

# Ernesto L. Chiesa

Ernesto L. Chiesa obtuvo su bachillerato en Artes (Filosofía) en la Universidad de Puerto Rico en 1964; obtuvo una Maestría en Filosofía en la misma institución en 1967. Luego cursó estudios doctorales en Lógica en la Universidad de California en Berkeley. En 1974 obtuvo el grado de Juris Doctor —Magna Cum Laude— en la Escuela de Derecho de la Universidad de Puerto Rico. Ha ocupado diversas posiciones en la Universidad de Puerto Rico desde 1964 hasta el presente, incluyendo Catedrático de la Escuela de Derecho, donde dicta cursos de evidencia, derecho penal y procedimiento criminal. Ocupó el puesto de Secretario del Tribunal Supremo desde septiembre de 1976 hasta agosto de 1981. Fue colaborador del Tribunal Supremo en la preparación del Proyecto de Reglas de Evidencia que finalmente fuera aprobado en el 1979. Ha publicado sendos artículos de revistas jurídicas. Ha sido principal colaborador de la publicación JTS® ™ y autor del Análisis Editorial de Práctica Procesal Puertorriqueña -Evidencia y de la obra Derecho Procesal Penal de Puerto Rico y Estados Unidos. Su Obra Magna es el Tratado de Derecho Probatorio, bajo el sello editorial de Publicaciones JTS. El Profesor Chiesa es continuamente citado por el Tribunal Supremo al igual que por el Tribunal de Apelaciones y los Tribunales de Primera Instancia en Puerto Rico. Entre sus múltiples distinciones profesionales se cuentan: Miembro del American Law Institute; Director de la Conferencia Judicial de Puerto Rico (1990-93); Presidente del Comité de Reglas de Evidencia de la Conferencia Judicial de Puerto Rico (1984-88); Miembro del Comité de Procedimiento Criminal y Evidencia (1984-92); Miembro Honorario del Ilustre Colegio de Abogados Penalistas de Bogotá (1994) y Académico Numerario de la Academia Puertorriqueña de Jurisprudencia y Legislación.

Actualmente preside el Comité del Tribunal Supremo que revisa las Reglas de Procedimiento Criminal (con el objetivo de someter a la Asamblea Legislativa unas nuevas reglas) y es miembro de otro Comité del Tribunal Supremo que revisa las Reglas de Evidencia. Fue miembro del Comité del Tribunal Supremo que estuvo a cargo de la Revisión del Manual de Instrucciones al Jurado. Desde hace más de 18 años, el Profesor Chiesa trabaja como asesor del Secretario de Justicia y del Procurador General en materia de Derecho Penal, Derecho Procesal Penal y Evidencia.

# DERECHO PROCESAL PENAL: ETAPA INVESTIGATIVA

Esta obra pretende presentar una exposición del derecho procesal penal en la etapa investigativa, con énfasis en los derechos constitucionales que amparan al ciudadano en esa etapa del procedimiento. Habida cuenta de la primacía de la Carta de Derechos en esta zona, se alude continuamente a la jurisprudencia de la Corte Suprema de los Estados Unidos y a la del Tribunal Supremo de Puerto Rico, que son las fuentes de derecho primarias. Como es harto sabido, los derechos de la persona reconocidos en la Carta de Derechos de la Constitución de los Estados Unidos tienen que ser reconocidos por los gobiernos de los Estados y de Puerto Rico, aunque éstos pueden reconocer garantías adicionales. En el Capítulo I se aborda lo relativo a la aplicación de la Carta de Derechos de la Constitución de los Estados Unidos a Puerto Rico.

En el Capítulo II se expone el derecho que gobierna el interrogatorio de testigos y sospechosos, materia gobernada por las cláusulas del debido proceso de ley, privilegio contra la autoincriminación y asistencia de abogado. Se aborda, además, lo relativo a la determinación de admisibilidad y suficiencia de las declaraciones obtenidas en esa etapa. Aquí, el derecho constitucional es totalmente controlante, con poca regulación estatutaria.

En el Capítulo III se expone el derecho aplicable a los procedimientos de identificación de sospechosos fuera de corte. Se aborda la protección constitucional que brindan el debido proceso de ley y el derecho a asistencia de abogado, y se explica por qué no hay protección bajo el derecho contra la autoincriminación. Se alude, también, al rol del derecho a la intimidad en esta zona. Por supuesto, se aborda la regulación estatutaria en la Regla 252 de Procedimiento Criminal.

En el Capítulo IV, por mucho el más extenso, se aborda el complicado derecho que rige la protección constitucional contra registros y detenciones irrazonables, tanto bajo la Enmienda Cuarta como bajo la mayor protección que surge de las secciones 1, 8 y 10 de la Carta de Derechos de la Constitución de Puerto Rico. Por supuesto, se considera también la regulación en las Reglas de Procedimiento Criminal, particularmente la Regla 234 que gobierna lo relativo a la moción de supresión de evidencia. Es en este Capítulo que se aborda el derecho constitucional a la intimidad. Se aborda primeramente todo lo relativo a la regla de exclusión en que se traduce la protección constitucional (alcance de la regla de exclusión y la

moción de supresión) y luego se aborda el alcance de la protección constitucional. Esto, a su vez, se divide en las exigencias para una orden judicial de arresto o de registro (warrant clause) y en la exigencia constitucional de razonabilidad para arrestos o registros sin orden judicial. De ahí la necesidad de aludir al derecho que gobierna el arresto sin orden y lo relativo a los distintos registros sin previa orden judicial. También se consideran registros y detenciones particulares, como el "stop and frisk", la detención y registro de vehículos, registros administrativos y otros.

Finalmente, en el Capítulo V se aborda el derecho constitucional contra la autoincriminación. Primeramente se aborda el derecho en general: su alcance, limitaciones, la inmunidad como mecanismo para neutralizar el privilegio, etc. Luego se atiende lo relativo al derecho especial que ampara al ya acusado a no declarar y a que no se hagan inferencias del ejercicio de ese derecho. Aunque esta dimensión del derecho supone ya el inicio de la acción penal (más allá de la etapa investigativa), se incluye para presentar una visión más completa del derecho contra la autoincriminación. En el Capítulo II ya se había abordado el derecho contra la autoincriminación en la zona del interrogatorio de testigos y sospechosos (Miranda y su progenie).

Se advierte que queda fuera de ese libro lo relativo al derecho especial que gobierna la legislación federal especial "antiterrorista", es decir, el Patriot Act y las acciones legislativas y ejecutivas en esta sensitiva zona. Para eso hay que considerar la literatura especializada y esperar por más jurisprudencia de la Corte Suprema que aclare la validez de las limitaciones a los derechos constitucionales de la persona que entraña esa legislación.

Este libro va dirigido a estudiantes, abogados, fiscales y jueces. No hay pretensión alguna más allá de ayudar a éstos a encontrar, y tal vez entender mejor, el derecho positivo que aparentemente gobierna los procesos de investigación criminal tratados en este trabajo. Por supuesto, estamos ante una zona de continuo devenir; se produce mucha jurisprudencia que cambia ese pretendido derecho positivo. De ahí la necesidad de suplementar anualmente este libro para incorporar la jurisprudencia del Tribunal Supremo de Puerto Rico y de la Corte Suprema de los Estados Unidos.

# Lic. Luis E. Chiesa

## Derecho Penal Sustantivo

PUBLICACIONES JTS

Luis Ernesto Chiesa Aponte es Profesor Adjunto de Derecho Penal en la Facultad de Derecho de Pace University en White Plains, New York. Obtuvo su Bachillerato en Administración de Empresas y revalidó como Contador Público Autorizado. Luego obtuvo su grado de Juris Doctor (Summa Cum Laude) en la Facultad de Derecho de la Universidad de Puerto Rico. Posteriormente, recibió el grado de Maestría en Derecho (LL.M) de Columbia University. Actualmente se encuentra cursando estudios conducentes al grado de Doctor en las Ciencias Jurídicas (J.S.D.) en Columbia University. Una porción de su tesis doctoral, la cual versa sobre ciertos aspectos debatidos de la teoría de la antijuricidad penal, ha sido aceptada para publicación en el Buffalo Criminal Law Review. Además, ha publicado sendos artículos en las principales revistas jurídicas de Puerto Rico sobre distintos aspectos del derecho penal.

Antes de comenzar sus labores docentes en Pace University, Luis Ernesto Chiesa fue Profesor Adjunto de Derecho Penal en la Facultad de Derecho de la Universidad de Puerto Rico y Oficial Jurídico del Juez Presidente del Tribunal Supremo de Puerto Rico, Hon. Federico Hernández Denton. Durante dicho tiempo, fue asesor del Comité para la Revisión del Manual de Instrucciones al Jurado de Puerto Rico adscrito al Secretariado de la Conferencia Judicial.

La teoría de la responsabilidad penal que sirve de base al Nuevo Código Penal es totalmente distinta a la que inspiró el Código Penal de 1974. A consecuencia de ello, bajo el Nuevo Código Penal es posible aducir una multiplicidad de planteamientos que bajo el Código Penal de 1974 no podían defenderse con seriedad. Ahora, por ejemplo, puede argumentarse que quien no contribuyó de forma significativa a la comisión del delito debe ser castigado mucho menos severamente que los verdaderos "autores" de la ofensa (Arts. 43-45 del Nuevo Código Penal). Esto era insostenible bajo la normativa sobre coautoría que se había adoptado en el viejo código (Art. 35 del Código Penal 1974).

Además, conforme al Artículo 9 del Nuevo Código Penal, el principio de favorabilidad ahora claramente aplica también hasta en los casos en que el convicto está cumpliendo su sentencia. Ello era, cuanto menos, dudoso bajo el anterior código. La figura de la tentativa también sufrió cambios.

Ahora solamente pueden hallarse incurso en tentativa quienes ejecutan el último acto necesario para consumar el delito. Según el viejo código, esto no era un elemento esencial de la tentativa.

De otra parte, a tenor con el Artículo 13 del Nuevo Código Penal ya no rige en Puerto Rico la doctrina de "interpretación restrictiva" de los estatutos penales. Ahora, distinto a lo que ocurría bajo la normativa desarrollada por el Tribunal Supremo en cuanto a este particular, las leyes criminales pueden interpretarse tanto restrictiva como extensivamente. La única interpretación prohibida es la "analógica" en virtud de la cual se crean judicialmente nuevos delitos o penas.

Para entender cabalmente estos y el resto de los cambios sustanciales que ha sufrido nuestro ordenamiento penal como consecuencia del Nuevo Código, es necesario realizar un análisis comparado de los preceptos contenidos en dicho código. Sólo así puede comprenderse el alcance de las nuevas doctrinas que han sido incorporadas al derecho penal puertorriqueño por medio de este nuevo intento codificatorio. Precisamente ese es el propósito de esta obra.

El análisis que hacemos de la materia equipara al estudiante y al profesional con los conocimientos necesarios para poder sacarle el máximo provecho al Nuevo Código Penal.

Incluimos, además, el texto completo del Nuevo Código Penal con Anotaciones del Lic. Chiesa en relación con la Jurisprudencia Interpretativa del Tribunal Supremo y las enmiendas legislativas que ha sufrido dicho Código. También, se incluye sin costo alguno un DVD que contiene sobre 4,500 págs. de los documentos del historial legislativo del Nuevo Código Penal, que incluyen, entre otros: Los estudios de base, las ponencia de las Vistas Públicas sobre el Código, los Proyectos radicados en el Senado y la Cámara, los Informes de Comisión, el debate y votación final en el Senado y el trámite en la Cámara, el Código Penal y sus enmiendas y las Leyes Complementarias a la Reforma del Código Penal.

*El bosquejo de la obra es el siguiente:*

▶ Introducción

  • Breve recuento del proceso que culminó con la aprobación del Nuevo Código Penal.

  • Examen de las bases conceptuales que subyacen al Nuevo Código Penal.

▶ Limitaciones Constitucionales al Ejercicio del Poder Punitivo

  • Implicaciones del debido proceso de ley para la redacción e interpretación de l eyes penales.

  • Leyes Ex Post Facto y la Jurisprudencia Reciente Sobre este Particular

  • Proporcionalidad y Castigos Crueles e Inusitados

  • Separación de Poderes y el Llamado "Delito Administrativo"

  • Los Límites al Poder de Criminalizar Conductas que Impone el Debido Proceso Sustantivo y el Derecho a la Intimidad

▶ Limitaciones Estatutarias al Ejercicio del Poder Punitivo

  • El Principio de Legalidad y sus Cuatro Consecuencias

  • La Eliminación de la Regla de Interpretación Restrictiva

  • El Problema de las Fuentes del Derecho Penal y la Limitada Aplicabilidad del Principio de Legalidad en Puerto Rico

  • El Más Robusto Principio de Favorabilidad del Nuevo Código Penal

    » Los Problemas de la "Tercera Ley"

    » Las Leyes Intermedias

    » Las Leyes Temporales como Excepción a Este Principio (Art. 10 del Nuevo Código Penal).

  • El Concurso de Leyes y Delitos

    » Concurso Real

    » Concurso Ideal y Medial

    » Concurso Aparente

    » Delito Continuado

    » Delito Masa – ¿Aplica a Puerto Rico?

▶ El Primer Eslabón de la Teoría de la Responsabilidad Penal - El Comportamiento Humano

  • Acciones Penalmente Relevantes

  • Omisiones Penalmente Relevantes

  • La llamada Comisión por Omisión (Art. 19 del Nuevo Código Penal)

  • La Posesión como Comportamiento

  • Casos Límite – Hipnósis, Sonambulismo, Eutanasia

▶ El Segundo Eslabón de la Teoría de la Responsabilidad Penal – La Antijuricidad

  • Elementos Objetivos de la Ofensa

  • Causalidad y la Nueva Figura de "Imputación objetiva" y "riesgo permitido" (Art. 25)

  • Elementos Subjetivos – Dolo Eventual v. "Temeridad" o "Recklessness"

  • Los Elementos Subjetivos Distintos a la Intención y su Relación con la Eximente de Intoxicación Voluntaria

  • El Error de Tipo del Art. 19 como una Forma de Excluir la Intención

  • Las Defensas de Justificación en Puerto Rico – La Nueva y Más Restrictiva Defensa de Estado de Necesidad

▶ El Tercer Eslabón de la Teoría de la Responsabilidad Penal en Puerto Rico – La Punibilidad

  • El Mayor Alcance de la Eximente de Coacción

  • La Nueva Defensa de Temor Insuperable

  • Las Defensas No-Exculpatorias y el Entrampamiento

INCLUYE CD QUE CONTIENE SOBRE 1,500 PAGS DE LOS DOCUMENTOS DEL HISTORIAL LEGISLATIVO DEL NUEVO CODIGO PENAL

Derecho Procesal Penal: Etapa Investigativa y Derecho Penal Sustantivo

Publicaciones JTS presenta dos nuevas obras de Derecho Penal:

PO BOX 9024120
SAN JUAN, P.R. 00902-4120
TEL. 721-0200

PRSRT STD.
U.S. POSTAGE
PAID
SAN JUAN, P.R.
PERMIT NO. 1175

P.O. Box 9024120
San Juan, P.R. 00902-4120
Tel. 721-0200 Fax. 721-0205
www.pub-jts.com

Sres: Favor enviarme un ejemplar de su nuevo libro:                                    Fecha_____

___ Derecho Procesal Penal: Etapa Investigativa (Prof. Chiesa) - $100.00 + $3.50 S/H = $103.50
___ Derecho Penal Sustantivo (Lic. L.E. Chiesa) - $100.00 + $3.50 S/H = $103.50
___ Ambos libros (un ahorro de $50.00) - $150.00 + $6.00 S/H = $156.00

Envíese a Lcdo(a)._____

Dirección_____

_____ Zip Code_____

Tel:_____ Fax _____ E-mail_____

Forma de pago: ___ Adjunto cheque por $_____ pagadero a Publicaciones JTS.

Cárguese el importe de esta orden ($_____) a mi tarjeta de crédito: ___AX ___MC ___VISA

Núm. de tarjeta_____ Fecha exp._____ Firma_____

Autorizo a Publicaciones JTS a renovar automáticamente estas suscripciones a su aniversario (12 meses calendario).
De no desear la renovación enviaré cancelación escrita a Publicaciones JTS.

*"práctica engañosa"*, entre otras definiciones. El *"**anuncio**"* se refiere a *"cualquier manifestación oral, escrita, gráfica, pictórica, electrónica o de cualquier otra forma presentada, hecha con el propósito de ofrecer, describir o de cualquier otra forma representar un bien o servicio, o algún aspecto de un bien o servicio"*. Un *"**anuncio engañoso**"* es *"cualquier anuncio que constituya o tienda a constituir fraude, engaño o comunique o tienda o comunicar una idea falsa o incorrecta sobre el bien o servicio anunciado."* Un *"**bien**"* es *"cualquier bien mueble o inmueble, mercancía, artículo o producto susceptible de ser objeto de una compraventa, arrendamiento o de cualquier tipo de transacción comercial."* La *"**práctica engañosa**"* se refiere a *"cualquier acto, práctica, curso de conducta, mecanismo de persuasión, ofrecimiento, información o promesa hecha, aparentemente hecha o sugerida, que fuere engañosa, falsa, fraudulenta o que de cualquier forma tienda al engaño, o mediante la cual se tergiversen o puedan malinterpretarse los verdaderos hechos de las cosas"*.

La Regla 7 del Reglamento 6772 establece lo siguiente:

*"Regla 7- Prácticas y Anuncios Engañosos*

*........*

*B. El término práctica engañosa incluye, entre otros, los siguientes actos:*

*1. representar o expresar un hecho o una oferta si tal declaración es engañosa o falsa, o posee la tendencia o capacidad para confundir, o si no se tiene la información suficiente para sustentarla, o se ocultare un dato relevante;*

*2. ........*

*3. anunciar u ofrecer un determinado bien o servicio como carnada, consciente que no está disponible o que no tiene cantidades suficientes, para atraer al consumidor e intentar venderle otro bien o servicio, desalentar la compra de un bien o servicio anunciado y ofrecer otro en sustitución."*

Las Reglas 13 y 15 del Reglamento 6772, establecen:

*"Regla 13. Disponibilidad del bien anunciado*

*El comerciante tendrá disponibles para la venta los bienes anunciados en especial en cantidades suficientes para responder a la demanda razonablemente anticipada durante todo el período de efectividad de la venta anunciada, a menos que se notifique adecuadamente que la mercancía sólo estará disponible en tiendas fuera de Puerto Rico. En tal caso, la notificación deberá aparecer clara y adecuadamente.*

*Regla 15. Divulgación de fecha de comienzo y fin de venta especial*

*Se divulgará en los anuncios la fecha de comienzo y fin de toda venta especial.*

*En el caso de anuncios de venta especial efectuados en periódicos de circulación general, incluyendo sus suplementos, hojas sueltas y "shoppers", se entenderá que un anuncio de esta índole comenzará a regir en la fecha de publicación inicial en aquellos casos en que la fecha de comienzo no conste en el mismo.*

*Cuando no se haya fijado término de duración de la venta especial, se entenderá que la venta especial se extiende por un plazo de treinta (30) días, contados a partir del último anuncio realizado.*

*Se podrá anunciar que la venta especial terminará al `agotarse la mercancía si se especifica clara y*

*adecuadamente la cantidad en existencia por cada tienda si se tratase de ventas de artículos fuera de temporada y ventas de liquidación por inventario. En estos casos deberá aparecer clara y adecuadamente en los anuncios que se trata de ventas de artículos fuera de temporada y ventas de liquidación por inventario."*

Por otro lado, el Reglamento Núm. 6794 para la imposición de sanciones y multas de D.A.C.O. del 1 de abril de 2004, en su Regla 8 establece que el aviso de infracción contendrá la siguiente:

*"Regla 8. Avisos de orientación o de infracción; contenido*

*........*

*B) El aviso de infracción contendrá lo siguiente:*

*1) Una descripción de las circunstancias personales del infractor, incluyendo, pero sin limitarse a, nombre de la persona, negocio o institución intervenida o investigada, dirección física y postal, y los números de teléfonos disponibles. En el caso de una corporación, sociedad o entidad jurídica, se expresará el nombre y dirección del Presidente o del agente residente;*

*2) La descripción de las circunstancias en que se realiza la inspección: lugar, fecha, hora en que se emitió el aviso, nombre de la persona o personas que reciben la infracción y su posición dentro de la estructura organizacional del negocio o institución investigada;*

*3) La descripción de la actuación u omisión constitutiva de violación;*

*4) Las disposiciones legales o reglamentarias por las cuales se le notifica el aviso de infracción;*

*5) Una advertencia a los efectos de que el Departamento podrá, dentro del término de veinte (20) días contados a partir de ser de emitido el aviso de infracción, notificar formalmente una multa administrativa y la cantidad máxima de dinero que podría imponérsele;*

*6) Las circunstancias del empleado o funcionario que emite el mismo: nombre completo en letra de molde, la Oficina Regional, Unidad o División del Departamento en la cual trabaja y su firma."*

La Regla 9 del Reglamento Núm. 6794 dispone:

*"Regla 9. Notificación de multa administrativa*

*El Departamento notificará la multa administrativa a la persona, negocio o institución infractora, dentro del término de veinte (20) días contados a partir de la fecha en que se emitió el aviso de infracción.*

*........*

*La notificación de multa administrativa contendrá:*

*1) Una descripción de las circunstancias personales del infractor, incluyendo, pero sin limitarse a, nombre de la persona, negocio o institución intervenida, su dirección postal;*

*2) La descripción de la actuación u omisión constitutiva de la infracción;*

*3) Todas las disposiciones legales o reglamentarias aplicables por las cuales se le imputa la violación.*

## B

Las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan, en aras de limitar su discreción, y que no quede a su arbitrio reconocer o no los derechos allí contenidos. *Com Vec. Pro-Mej., Inc. v. J.P.,* 147 D.P.R. 750, 764 (1999). Veánse, además, *García Cabán v. U. P.R.,* 120 D.P.R. 167, 175 (1987); *Díaz de Llovet v. Gobernador,* 112 D.P.R. 747, 757 (1982); *García v. Adm. del Derecho al Trabajo,* 108 D.P.R. 53, 56 (1978). Una vez la agencia adopta una norma administrativa, debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, objetivos y política pública que la forjaron. Además, la agencia viene obligada a velar porque los requisitos estatutarios establecidos en su reglamento sean cumplidos. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70, 81 (1999).

La L.P.A.U. define los derechos que cobijan a una persona natural o jurídica objeto de una disposición administrativa en dicho procedimiento adjudicativo formal ante la agencia. Así, tiene derecho a una notificación oportuna de los cargos o querellas o reclamos en contra de una parte, derecho a presentar evidencia, a una adjudicación imparcial y a que la decisión administrativa se base en el expediente. 3 L.P.R.A. sec. 2151.

La notificación de una querella es un requisito indispensable para la validez del procedimiento administrativo de carácter adjudicativo. Su incumplimiento violenta el derecho a ser oído, toda vez que forma parte y está ligada a él de manera indisoluble. A través de la notificación se le informa a la parte querellada de las alegaciones en su contra y se le concede oportunidad razonable para contestar y presentar su caso. Es un requisito elemental del debido proceso de ley. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 2da. Ed., Forum, pág. 150.

También se requiere que sean notificados los hechos constitutivos de la alegada infracción cometida por el querellado. De lo que se trata es de la especificación de las controversias o cuestiones de hechos y de derecho que surgen del caso. El criterio rector para determinar el cumplimiento del requisito señalado y, muy en especial, de notificar las disposiciones legales alegadamente violadas y los hechos que dan lugar a la violación, es si la notificación razonablemente le permite preparar su caso. La medida que se aplica es si la persona querellada conoce la conducta ilegal que se le imputa y tiene una oportunidad justa y adecuada de presentar su defensa. D. Fernández Quiñones, *ante.*

Forzoso es concluir que erró D.A.C.O. al resolver que la notificación de infracción es una conforme a derecho. La misma se limita a exponer los elementos típicos de la infracción alegada sin indicar hecho alguno referente al mismo. Deja de detallar los artículos o bienes a que se refiere la agencia que se pusieron en venta en contravención del Reglamento. Con el propósito de poder tipificar las faltas impuestas, hay que especificar lo que la agencia no notificó en su "*aviso y notificación de infracción,*" los bienes objeto del anuncio que a su vez alegadamente resultó engañoso por no contar con cantidad suficiente.

## C

No podemos perder de vista de que en el presente caso el dictamen adjudicativo final de la agencia confirmando la violación reglamentaria y la imposición de la multa, se emitió sin que se le haya conferido a Comp USA el derecho a la celebración de vista. El error incide fundamentalmente en el debido proceso de ley, por lo que aunque no se plantea en aras de impartir justicia, tenemos facultad para considerarlo. *Hons. Castro, Cabán v. Depto. de Justicia,* 153 D.P.R. 302, 312 (2001); *Hernández v. Espinosa,* 145 D.P.R. 248, 264 (1998). El día de la vista administrativa se planteó la desestimación de la "*notificación de infracción.*" Cuando la agencia resolvió que no procedía la desestimación de la notificación de infracción, estaba impedido de emitir su dictamen final conclusivo de que Comp USA violó la ley y los reglamentos. Debió devolver el caso para la etapa de la vista administrativa para dar cumplimiento a la sec. 3.9 de la Ley Núm. 170, *ante,* a saber, la celebración de la audiencia, presentación de evidencia, contrainterrogatorio y la decisión a base del expediente

bajo el criterio de evidencia sustancial.

En *Magriz v. Empresas Nativas,* 143 D.P.R. 63, 70 (1997), el Tribunal Supremo expresó:

*"Para garantizar el objetivo de hallar la verdad y hacer justicia a las partes, tanto la Sec. 3.1 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2151, como la jurisprudencia, han establecido que al emitirse una resolución la agencia debe salvaguardar el derecho a la concesión de vista previa, a una notificación oportuna y adecuada, al derecho a ser oído, a confrontarse con los testigos, a presentar prueba oral y escrita a su favor, y a la presencia de un adjudicador imparcial."* Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 202 (1987); *Ortiz Cruz v. Junta Hípica,* 101 D.P.R. 791, 795 (1973). La decisión administrativa ha de ser informada con conocimiento y comprensión en la evidencia pertinente al caso, *A.D.C.V.P. v. Tribunal Superior,* 101 D.P.R. 875, 883 (1974). Además, deben efectuarse determinaciones de hechos y consagrar los fundamentos para la decisión administrativa. *Rivera Santiago v. Srio. de Hacienda,* 119 D.P.R. 265, 274 (1987).

En *Almonte et al. v. Brito, 156 D.P.R. 475 (2002),* el Tribunal Supremo resolvió:

*"Se han hecho extensivas a los procedimientos administrativos las siguientes garantías tradicionalmente reconocidas: la concesión a una vista previa, oportuna y adecuada notificación, derecho a ser oído, confrontarse con los testigos, presentar prueba oral y escrita a su favor, y la presencia de un adjudicador imparcial."* López y otros v. Asoc. de Taxis de Cayey, supra, pág. 114; *Henríquez v. Consejo Educación Superior, supra; Ortiz Cruz v. Junta Hípica,* 101 D.P.R. 791, 795 (1973).

La Sec. 3.1 de la Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2151), según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), reconoce las garantías antes señaladas.

Las decisiones administrativas están revestidas de una presunción de regularidad y corrección; por lo que sólo intervendremos si las mismas no hayan apoyo en el expediente administrativo. *P.C.M.E. Comercial S.E. v. Junta de Calidad Ambiental,* res. 23 de diciembre de 2005, **2006 J.T.S. 7**. Nuestro ejercicio de revisión debe regirse por el criterio de razonabilidad en la actuación de la agencia. *Otero Mercado v. Toyota de P.R. Corp.* res. 3 de febrero de 2005, **2005 J.T.S. 13**. Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero Mercado v. Toyota de P.R. Corp., ante.*

Compete al que impugna una determinación administrativa probar que la evidencia en que se apoya la agencia no es sustancial. Debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio en la evidencia impugnada hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Misión Industrial P.R., Inc. v. Junta de Planificación,* 146 D.P.R. 641 (1998).

En cuanto a las conclusiones de derecho del organismo administrativo, éstas son revisables *in toto*, 3 L.P.R.A. sec. 2175; *Municipio de San Juan v. Junta de Calidad Ambiental,* 152 D.P.R. 673 (2000).

Concluimos que se le negó a Comp USA el derecho a la vista administrativa al resolverse la controversia; ya que se le impuso la multa tan pronto se denegó la desestimación, sin proveer una vista evidenciaria. El propósito que persigue el reglamento es evitar la actuación engañosa consistente en anunciar un producto en especial, sin tener disponible una cantidad suficiente para satisfacer la demanda razonablemente previsible. En el caso de autos, no existe evidencia alguna sobre cómo comparan las cantidades disponibles, según indicadas en el *"flyer"* con la demanda razonablemente previsible. Véase que la venta especial es por sólo dos (2) días. Al

no celebrarse vista evidenciaria, previo a la imposición de la multa de dos mil dólares ($2,000.00), se le violó el debido proceso de ley. Procede que revoquemos la multa ilegalmente impuesta.

## D

Los tribunales deben brindar, igualmente, deferencia a las interpretaciones que las agencias administrativas hacen de las leyes cuya administración le fue encomendada por la Legislatura y de las normas jurisprudenciales y reglamentarias aplicables. Ello, en función del conocimiento especializado que la agencia posee en los asuntos o materia delegada por la Asamblea Legislativa. *Rivera v. A & C Development Corp.*, 144 D.P.R. 450 (1997; *Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85 (1997). Esta deferencia judicial al *expertise* administrativo, cede ante una actuación irrazonable, ilegal o arbitraria. *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70 (2000). Por imperativo del debido proceso de ley, se exige a las agencias administrativas llevar a cabo un proceso justo y equitativo al intervenir con el interés propietario de una persona. *López Santos v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109 (1996). Si el tribunal, luego de un análisis ponderado del expediente en su totalidad, descubre que se infringieron valores constitucionales o la actuación administrativa fue arbitraria o irrazonable, puede sustituir el criterio de la agencia por el suyo y revisar el dictamen administrativo. *Pérez v. VPH Motor Corp.*, 152 D.P.R. 475 (2000).

Debemos deferencia a las interpretaciones del derecho que hagan las agencias administrativas en la medida que no sea una irrazonable. *Ramírez v. Depto. de Salud*, 147 D.P.R. 901 (1999); *Quevedo Segarra v. J.A.C.L.*, 102 D.P.R. 87 (1974). Ahora bien, no debemos aceptar aquella interpretación estatutaria que es contraria al lenguaje o propósito expreso de la Ley. *Román v. Superintendente de la Policía,* 93 D.P.R. 685 *(*1966); *Compañía Azucarera v. Comisión de Servicio Público,* 71 D.P.R. 212 (1956).

No se le dio cumplimiento al Reglamento Núm. 6772 sobre la manera de llevar a cabo la investigación administrativa. Ello, amparada la investigación básicamente en la lectura de un *"shopper"*. La interpretación de la agencia de diferenciar el procedimiento a base de si la investigación se llevó a cabo a base de la visita al establecimiento comercial o no, no es una amparada en el Reglamento. La agencia venía obligada a seguir los procedimientos contenidos en los propios reglamentos que promulgó. No hay base en el expediente ni justificación legal que nazca del *expertise* de D.A.C.O. para aplicar los requisitos de la Regla 8, sólo a casos en que la investigación se lleve a cabo en el local del comercio. Tal disposición no excluye de su aplicación a *"investigación"* por lecturas de un *"shopper"*.

## III

Por todo lo antes expuesto, *revocamos la resolución emitida en reconsideración por D.A.C.O. el 5 de junio de 2005.* En consecuencia, se revoca la imposición de multa a Comp USA.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones